UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION 3:05–CV–781–H

| | |
|---|---|
| JORETTA HAYES, Administratrix of the Estate of GEORGE HAYES, JR., and JORETTA HAYES, as next friend and natural mother of JENNIFER HAYES and MATTHEW HAYES, minors | PLAINTIFF |
| V. | |
| MTD PRODUCTS, INC., d/b/a Cub Cadet | DEFENDANT |

**MEMORANDUM OPINION**

During trial, the Court found itself confronted again and again with evidentiary questions that should have been settled well prior to the point at which they were raised.  Therefore the Court is filing this Memorandum to briefly recap the framework under which it analyzed these evidentiary questions.

Specifically, the Court will address three general categories of objections raised by the parties.  First, Plaintiff's counsel has argued, both in motions filed with the Court and here in open court, that evidence of other lawnmower accidents besides the one at issue in this case should be admissible as substantive evidence regarding the accident here.  Second, Plaintiff's counsel has argued that evidence that other manufacturers placed safety features on their lawnmowers should be admissible.  Finally, Defense counsel argued that his expert, Dr. Smith, should be permitted to testify as to his heretofore undisclosed opinion regarding certain details of the accident which led to the death of George Hayes, Jr.  The Court has entered orders in writing and ruled from the bench on these issues on multiple occasions, but the Court will address each

category in turn after briefly reviewing several fundamental evidentiary principles bearing on its analysis.

### *Federal Rules of Evidence 401, 402, and 403*

As the parties are no doubt well aware, Federal Rules of Evidence ("Rules") 401 and 402 make relevant evidence admissible. Relevant evidence is of course defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

But just as importantly, Rule 403 permits a court to exclude relevant evidence if the probative value of that evidence is substantially outweighed by such things as the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence.

Therefore it should be clear from the plain text of the Rules of Evidence that the relevance of a piece of evidence, standing alone, does not necessarily dictate its admissibility.

### *Other Accidents*

In its initial effort to put the "other accidents" issue to rest, the Court issued an order on June 18, 2008, which held in pertinent part that evidence of similar lawnmower accidents which occurred <u>prior</u> to the one at issue in this case could be introduced if those accidents had been relied upon by Plaintiff's expert, Thomas Berry, in preparing his report or preparing for his deposition. The Court also held in that order that evidence of similar lawnmower accidents which occurred <u>after</u> the one at issue in this case could not be introduced through Mr. Berry. It

was the Court's understanding that such accidents did not provide the basis for either Mr. Berry's expert report or the opinions he offered at his deposition. These rulings were based primarily upon the Court's view that it would be inappropriate for Mr. Berry to testify at trial regarding accidents other than the one at issue here which he had not examined as part of rendering the opinions about which he was questioned at his deposition. Additionally, the Court indicated in response to Plaintiff's counsel's repeated arguments that Federal Rule of Civil Procedure 26 empowered him to add items by the tens and even hundreds to his list of exhibits and expert disclosures, seemingly without limit, that Rule 26 did not provide nearly so much license. And finally, the Court was skeptical of the relevance of many of these "other accidents" as well.

Scholars have noted that the various permissible purposes for which evidence of other similar accidents may be offered, *i.e.* the various ways in which such evidence may be relevant, tend to blend together. 1 K. Broun, McCormick on Evidence § 200. However, there are four generally recognized categories of permissible purposes for which other accidents may be offered in a products liability case such as this one. They are:

> (1) to prove the existence of the alleged defect,
> (2) to prove that the alleged defect caused the harm suffered by the Plaintiff,
> (3) to prove the existence of a dangerous condition at the time of the accident, *i.e.*, to prove the extent of the risk in question, and
> (4) to prove the Defendant's notice or knowledge of the danger at the time of the accident.

*See, e.g., Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 375 (6th Cir. 1983) (citing 1 K. Broun, McCormick on Evidence § 200). But courts have recognized the potentially limitless scope of several, if not all of these purposes, and have therefore limited the admissibility of other accidents to those which are "substantially similar" to the accident at issue.

3

*See, e.g., Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 102 (6th Cir. 1989). Though no fixed definition of when an accident is substantially similar and when it is not has been adopted, *see, e.g., Bryan v. Emerson Elec. Co.*, 1998 WL 90910, *5 (6th Cir. Sept. 1, 1988), the requirement means such things as that the proffered other accident must have occurred under similar circumstances or must share the same cause. *Rye*, 889 F.2d at 102.

The substantial similarity requirement is eminently sensible, because an accident that is <u>not</u> substantially similar would not meaningfully speak to any issue pertinent to this accident, and therefore would be irrelevant. *Bryan*, 1998 WL 90910,*4; *see also* 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 401.08[2] (Joseph M. McLaughlin, ed., 2d ed. 2008) ("The greater the degree of similarity and proximity between the similar accident and the accident at bar, the greater the probative value of the evidence"). So for evidence of other accidents to even be marginally relevant, it must bear similarities in critical respects to the accident at issue in this case. This is an extremely difficult test to satisfy in a case such as this one, given the highly fact-specific nature of each and every accident that occurs on a lawnmower.

In this case, there is no dispute regarding the existence of what Plaintiff alleged was a defect with the ZTR mower at issue, namely, the lack of ROPS. Therefore any evidence introduced to prove that issue, though relevant, would at a minimum be "excludable" pursuant to Rule 403.

Equally clear is that as a matter of logic, any evidence introduced to prove Defendant's notice of the allegedly dangerous condition of the ZTR mower would have to have existed prior to the accident. Therefore allegedly similar accidents occurring <u>after</u> the accident in question

4

could not be offered to prove notice.

A more appropriate purpose for which such "other accidents" evidence might be offered would be to prove the issue of causation. *See, e.g., Clark v. Chrysler Corp.*, 310 F.3d 461, 473 (6th Cir. 2002). Likewise, dangerousness might be a highly relevant purpose for which to offer such evidence in this case. *See* 1 K. Broun, McCormick on Evidence § 200. But even if directed at these purposes, as the Court has attempted to make clear throughout the litigation of this case and will reemphasize again here, merely identifying a proper purpose for a piece of evidence does not dictate its admissibility. Each item of proffered evidence must be analyzed for the substantial similarity requirement and any other Rules of Evidence and Civil Procedure that it might implicate. *See, e.g., Rye*, 889 F.2d at 102–03 (affirming exclusion of evidence of other accidents regarding which there were no "allegations specific enough for the District Court to determine whether they were sufficiently similar to admit at trial"); *see also* 2 Weinstein & Berger, Weinstein's Federal Evidence § 401.08[2] (noting that where evidence is offered to prove dangerousness, "a high degree of similarity will be essential"); 1 K. Broun, McCormick on Evidence § 200 (noting that "[t]he requirement of substantial similarity is applied strictly" to evidence of other accidents offered to prove dangerousness, and that "the conditions of other injuries and the present one must be similar" to make evidence of other accidents offered to prove causation relevant). As this Court has noted in the past in response to evidence of other accidents offered to prove causation, where no determination has been made as to the similarity of causation of the other accidents, such evidence "has almost no probative value on the issue of the cause of the accident in th[e instant] case . . . . [and] may lead to confusion of the jury and waste of time." *Burke v. U-Haul Int'l*, 2007 WL 403588, *1 (W.D. Ky. Jan. 31, 2007)

5

(expressing concern that "introduction of the prior accidents could mislead the jury as to the cause of the [plaintiff's] accident. They may create trials within the trial.")

To illustrate the Court's point, consider that hearsay evidence might well be offered for a permissible purpose, such as to prove dangerousness. But this certainly does not make hearsay evidence admissible, unless it satisfies a hearsay exception as well. As another example, counsel might come up with a new and different expert report just before trial which would unquestionably be relevant to this case, but Rule 26 of the Rules of Civil Procedure would likely bar such a report. Quite simply, relevance is not the only issue that has to be addressed for an item of evidence to be deemed admissible.

In this case, Plaintiff's counsel has repeatedly argued for admission of other accidents, regardless of their similarity to the accident in this case, the time at which he disclosed them, whether they were cumulative, or whether they otherwise ran afoul of the Rules of Evidence or Civil Procedure. In his brief filed five days before trial, Plaintiff's counsel devoted over twenty (20) pages to strenuously arguing that the Court had excluded evidence offered for a proper purpose. But as set forth above, Plaintiff's counsel's arguments fundamentally misapprehend the reasons for which the Court excluded certain proffered evidence, which were not limited to a belief in the relevance or irrelevance of said evidence.

### *Actions of Other Manufacturers*

The Court now proceeds to discuss the 80-plus exhibits pertaining to actions taken by other manufacturers. In an effort to address this "other manufacturers' actions" issue, the Court ruled from the bench that Plaintiff's effort to introduce this evidence would not be permitted, not

6

least due to its needlessly cumulative nature.

The evidence in question pertained to whether other lawnmower manufacturers besides Defendant offered rollover protective systems, or "ROPS" on their ZTR mowers, either as optional or standard equipment, as of dates subsequent to the accident at issue in this case. Plaintiff's counsel stated that the evidence tended to prove dangerousness and feasibility of an alternative safer design. Specifically, Plaintiff's counsel proffered approximately sixty (60) brochures pertaining to other manufacturers' lawnmowers, which Plaintiff's counsel apparently printed off the Internet between 2006 and 2008. He also proffered some 38 exhibits from Mr. Berry's deposition. Plaintiff's counsel also argued that because Defense counsel was permitted to refer to what other manufacturers had done subsequent to Mr. Hayes' 2005 accident in his cross-examination of Mr. Berry, Plaintiff's counsel should have been permitted to delve into manufacturers' acts subsequent to 2005 as well.

As a preliminary matter, the Court reiterates its belief that evidence of what other manufacturers have done with regard to other products at times subsequent to the manufacture date of the lawnmower at issue in this case is at best marginally relevant to the question of product dangerousness. More important, there is a critical distinction between the purpose for which the facts to which Defense counsel referred were raised and the purpose for which Plaintiff's counsel sought to introduce his evidence. Defense counsel's reference to, for example, a 2006 Consumer Reports article was intended to impeach or discredit Mr. Berry's opinion regarding the condition of the mower upon which he was rendering his opinion in his report and at his deposition. The article had been prepared prior to Mr. Berry's report, so the fact that Mr. Berry may or may not have referred to it in his report or at his deposition was

7

highly relevant to the issue of the weight his opinion should be given.  In contrast, Plaintiff's counsel said he wanted to offer his evidence to prove either feasibility of an alternative design or the "dangerousness" of the ZTR mower.

Of course, the problems with attempting to prove "dangerousness" by introducing evidence of actions taken by other manufacturers subsequent to Mr. Hayes' accident are several.  First, the relevance of this evidence is somewhat questionable, since the fact that a manufacturer other than MTD Products made a change to a product other than the one at issue in this case is at tends to prove very little about the dangerousness of this product in this situation.

But even setting aside this relevance, proving "dangerousness" by introducing a manufacturer's acts subsequent to the accident in question runs afoul of Rule 407, since it attempts to prove the defect in the product or its design by reference to those acts, which is barred by that Rule's plain text.  Of course, Rule 407 does allow for admission of subsequent remedial measures, but only in certain narrowly-defined circumstances, such as where the Defendant contests the "feasibility of precautionary measures."  As indicated by the parties, this issue was not controverted in this case.  This leaves only one or more of the propositions clearly deemed impermissible by the Rules as purposes to which Plaintiff's counsel's evidence could be directed, and its admission would have been improper.

### *Expert Opinion Regarding Crash Details*

Defense counsel argued that his expert, Dr. Smith, should have been permitted to offer an opinion not previously offered in Dr. Smith's report, namely, the opinion that the lawnmower did not roll, but rather slid into the ditch.

As the text of Rule 703 indicates, it is entirely proper to ask an expert to offer an opinion on facts which have come to light during trial. But it was the Court's view that contrary to Defense counsel's characterization, that was not what he wanted Dr. Smith to do. Instead, Defense counsel seemingly wanted Dr. Smith to offer an additional opinion, based not on facts elicited at trial, but rather simply on the information Dr. Smith had already reviewed in preparing his report. In keeping with much of the foregoing discussion, the Court found such supplementation impermissible.

*Hill v. Reederei F. Laeisz G.M.B.H., Rostock* is not to the contrary. In that case, the Third Circuit noted in response to a party's objection to an offered-at-trial expert opinion that was not included in the testifying expert's report that the court was unaware of "any bright line rule that every opinion by an expert must be preliminarily stated in the report, or forever be precluded." 435 F.3d 404, 423 (3d Cir. 2006) (internal citations omitted). However, the court also noted that "District Courts are vested with broad discretion in making admissibility determinations." *Id.* Defense counsel argued that as in *Hill*, Dr. Smith would have offered his "new" opinion merely to rebut the sequence of events described by Mr. Berry. And indeed, the Court's review of Mr. Berry's testimony shows that Mr. Berry did state an opinion regarding the specific details of how the accident happened, namely, that the lawnmower rolled 270 degrees before coming to rest atop Mr. Hayes.

Though the Court could certainly characterize the proffered testimony by Dr. Smith as rebutting Mr. Berry's opinion and exercise its discretion to allow him to offer that opinion, what Defense counsel really seemed to want to elicit from Dr. Smith was not an opinion about Mr. Berry's testimony, but rather an entirely new opinion regarding the event. Therefore the Court

believes this testimony was properly prohibited.

Finally, as the Court noted in response to Defense counsel's offer of proof regarding Dr. Smith's testimony, much of what Defense counsel apparently believed the Court to be prohibiting was in fact entirely permissible. Such things as testimony regarding the fact that Mr. Hayes' body preceded the lawnmower to the bottom of the ditch, the fact that Mr. Hayes' injuries were inconsistent with what one would expect from a rollover, or the fact that Mr. Hayes became "separated" from the lawnmower did not raise the same concerns as the seemingly "new" opinion the Court disallowed.

### *Summary and Conclusion*

To summarize, any assertion by Plaintiff's counsel that he was somehow treated differently from Defense counsel with regard to the issue of admitting evidence of subsequent accidents or subsequent acts taken by other manufacturers is quite simply incorrect and, at best, misapprehends the nature of the Court's rulings. The Court hopes that the discussion above further clarifies the analyses apparently giving rise to that impression. Most fundamentally, the Court cannot overemphasize the fundamental principle that simply identifying a proper or relevant purpose for a piece of evidence, be it "dangerousness" or anything else, does not render the rest of the Federal Rules of Evidence and Civil Procedure impotent. Each piece of evidence must be analyzed with reference to all Rules it implicates.

Having reviewed these matters in some detail in response to the multiple filings and oral arguments on these issues throughout this case, the Court remains confident of its understanding of the evidentiary principles discussed above, which led it to adhere wherever possible to the following principles in this case:

1.  Evidence of <u>prior</u> accidents may be relevant on the issues of notice, dangerousness, causation, or existence of the allegedly dangerous condition. However, such evidence must not run afoul of any other Rules of Evidence or Civil Procedure, and all such evidence must be substantially similar, in varying degrees depending on the exact purpose for which it is offered, to the accident at issue in this case.

2.  Evidence of <u>subsequent</u> accidents may be relevant on the issues of dangerousness, causation, or existence of the allegedly dangerous condition, but not on the issue of notice. Again, regardless of its relevance, such evidence must not run afoul of any other Rules of Evidence or Civil Procedure and must meet the substantial similarity requirement.

3.  Expert opinions have been limited to those issues and materials which formed the basis for those experts' opinions, as rendered in their reports and depositions.

4.  Evidence of other manufacturers' changes to their products at times after the accident at issue in this case may be marginally relevant to the question of dangerousness or feasibility of an alternative safer design, but may just as surely be excluded when they violate any other Rules of Evidence or Civil Procedure.

The Court believes these principles offer the best hope of a fair and expeditious process to all parties.

cc:   Counsel of Record